# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:13-cr-09-GZS |
| GREG BURNELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER ON PETITION FOR EARLY TERMINATION OF SUPERVISED RELEASE

Before the Court is the Petition for Early Termination of Supervised Release, or in the alternative, Modification of the Term of Supervised Release (ECF No. 4). The Court held an evidentiary hearing on the Petition on November 20, 2017. At the close of the hearing, the Court invited further briefing on its ability to modify Burnell's term of supervised release from life to ten years. Those briefs were filed on December 15, 2017.

For reasons explained herein, the Court now DENIES the Motion.

### I. FACTUAL BACKGROUND

On March 12, 2008, Greg Burnell was sentenced in the Northern District of New York based on his pleas of guilty to one count of possession of child pornography and one count of destruction of records in connection with a federal investigation. At sentencing, Judge McAvoy imposed a seventy-two month term of imprisonment, a $30,000 fine, and a life term of supervised release.[1] Burnell completed his term of imprisonment and commenced supervised release on October 26, 2012. At that time, jurisdiction over Burnell was transferred from the Northern

---

[1] A copy of the Judgment imposing this sentence in NDNY Docket No. 1:06-cr-497-TJM may be found on the present docket at ECF No. 1-3.

District of New York to the District of Maine based on his family connections. Notably, in the order approving the transfer of jurisdiction, the sentencing judge "expressly consent[ed] that the period of . . . supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court." See Transfer of Jurisdiction Order (ECF No. 1).

On February 6, 2013, the Court received a Petition to Modify the Conditions of Supervised Release (ECF No. 2) with Burnell's consent. The Court granted this Petition under which Burnell agreed to serve four months of home confinement as a result of being charged for Failure to Register as a Sex Offender, a Class D misdemeanor, and failing to give his legal name when applying for housing. This Petition reflects the only incident of noncompliance Burnell has had since he began his term of supervised release.

At the hearing on the pending Motion, Charles Morrison, Burnell's clinical therapist, testified about Burnell's successful participation in sex offender treatment, including his multiple "nondeceptive" polygraphs. Over ten years, Burnell is one of only five clients that Morrison has had reach the "After Care" phase of this treatment. Based on this achievement and the risk assessment instruments used by Morrison, Burnell appears to have a very low risk of reoffending. Overall, Morrison considers Burnell to be a model client.

The Court also received testimony from Burnell's supervising Probation Officer, Michael Barker. Barker similarly indicated that Burnell is classified at the lowest risk level recognized for sex offenders. Compared to his other supervisees, Barker considers Burnell's rehabilitation remarkable. Barker also indicated that given Burnell's remarkable progress, he does not see a public safety reason to keep Burnell on supervised release. However, Barker also explained that Burnell's 2013 failure-to-register conviction means he does not qualify for a recommendation of early termination under Probation's policies.

Finally, the Court received testimony from Mr. Burnell. Burnell explained the factual background of his 2013 failure-to-register offense. As explained by Burnell, he ultimately telephoned the Scarborough Police Department and thereby notified the local police of his new residence within 72 hours of his arrival. However, Burnell acknowledged that when he told his Probation Officer at the time about his planned move to Scarborough, the Probation Officer had told him to appear at the local Police Department within 24 hours for registration. Burnell explained that winter weather, along with confusion as to whether he had to appear in person, and a failure to appreciate the critical importance of the timing of the registration requirement, all contributed to this misdemeanor offense. In short, the facts do not suggest an attempt to evade the registration requirement, nor a failure to accept responsibility for the delayed registration. Overall, Burnell's testimony also evidenced a commitment to be a fully integrated law-abiding member of the community.

To date, Burnell has served just over five years of supervised release. However, he was also subject to significant supervision while on bail for these offenses. As a result, Burnell has spent the last eleven years under some form of federal supervision.

## II.     DISCUSSION

Defendant's Petition first asks for the immediate early termination of his lifetime term of supervised release. The Court recognizes that it has the statutory authority to terminate supervised release in this case given the completion of at least one year of supervised release. See 18 U.S.C. § 3583(e)(1). However, this statutory authority requires the Court to consider multiple complex factors. Some of those factors, including "protect[ing] the public from further crimes of the defendant" and "providing the defendant with needed educational or vocational treatment, . . . or other correctional treatment in the most effective manner," weigh in favor of terminating Burnell's

supervised release. 18 U.S.C. § 3553(a)(2)(C) & (D). On the record presently before this Court, the Court readily concludes that Burnell unlikely to commit further crimes and does not need educational or vocational treatment. Even in the absence of supervised release, the Court believes Burnell would continue to seek out the treatment he requires to maintain his current status. However, in the Court's assessment, some of the other applicable factors weigh in favor of requiring Burnell to remain on supervised release; namely, "the nature and circumstances of the offense," "the history . . . of the defendant," as well as "affording adequate [general] deterrence" support requiring additional supervised release. 18 U.S.C. § 3553(a)(1) & (2)(B). Moreover, the Court notes that beyond the offenses of conviction, the misdemeanor offense committed by Burnell early in his term of supervised release weigh in favor of an additional period of supervised release. Notably, it is the nature of his offenses, combined with the one incident of noncompliance, that makes Burnell currently ineligible for a recommendation of early termination under Guide to Judiciary Policy, Vol. 8, Part E, § 380.10.

In short, while the Court acknowledges that Burnell has made exceptional progress since commencing his term of supervised release, the Court concludes that further evidence that Burnell is able to maintain this progress over a longer period of time is necessary to support early termination. Therefore, the Court denies the request to terminate Burnell's supervised release immediately.

Alternatively, Burnell's Petition asks the Court to modify his term of supervised release from life to ten years, which would result in termination of his supervised release in October 2022 absent any revocation. The Court concludes that there is no statutory authority for granting this request and, alternatively, in an exercise of its discretion, that it would decline to issue such a modification on the record presented.

4

A criminal judgment that includes a sentence of imprisonment is a final judgment that may only be modified in limited circumstances detailed by statute. See 18 U.S.C. § 3582(b) & (c). Ultimately, supervised release is an important part of the final judgment. In this case, the Court has not found any statutory authority that clearly allows this Court to presently change the final judgment entered on March 21, 2008, by adjusting the term of supervised release from life to ten years. Counsel for Burnell and the Government have both undertaken extensive searches for authority in response to repeated requests by the Court. (See ECF Nos. 10, 12, 19 & 20.) However, the Court concludes that none of the cases cited in those supplemental briefs provide authority for this Court to lower the original term of supervised release now based on its assessment of Defendant's progress made during the first five years of supervised release.

Even assuming the Court's analysis of the cited cases and relevant statutes is incorrect and the Court could categorize Defendant's request as a permissible advance request for early termination, the Court would decline to order such a modification at this time. Quite simply, the decision to terminate Burnell's supervised release in October 2022, or at some other time, would be best made based on the record and recommendations then available to the Court.

### III. CONCLUSION

The Court hereby DENIES the Petition for Early Termination of Supervised Release, or in the alternative, Modification of the Term of Supervised Release (ECF No. 4). However, the Court's ruling on this Petition is made without prejudice to Mr. Burnell or Probation seeking early termination at a later date.

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 2nd day of January, 2018.